DECISION AND JUDGMENT ENTRY
{¶ 1} Douglas K. Betts appeals his conviction in the Pickaway County Court of Common Pleas for receiving stolen property in violation of R.C. 2913.51. Betts contends that the trial court erred in overruling his motion for a mistrial. Specifically, Betts contends that the trial court erred in allowing inadmissible evidence into the record and in failing to strike certain testimony and give curative instructions. Because Betts failed to demonstrate that the outcome of his trial would have been different had these alleged errors not occurred, we disagree. Betts also asserts that prosecutorial misconduct deprived him of a fair trial. Because we find that the prosecutor did not engage in any misconduct, we disagree. Finally, Betts asserts that the jury's verdict is not supported by sufficient evidence and is contrary to the weight of the evidence. Because the record contains some competent credible evidence that, if believed, would convince the average mind of Betts' guilt beyond a reasonable doubt, and because we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Michael Bowersock of Perry County reported that his pick-up truck was stolen in April of 2001. Herbert Gaines of Pickaway County reported that his license plates were stolen in February of 2002. A short time later Norman Sowers, who worked with Betts, tipped off Pickaway County Sheriff's Detective Rex Emrick that Betts was storing a stolen pick-up truck on his property. Mr. Sowers suspected that the truck was stolen because he overheard Betts ask Ross Anderson how he could get tags so that he could use the truck, and Anderson replied that it was not worth going to jail for.
 {¶ 3} Det. Emrick investigated by entering the property that adjoins Betts' property. He was able to view the truck and read its license plates from the neighbor's property. After running the license plates and learning that they were the same tags that Gaines had reported stolen, Det. Emrick obtained a search warrant. Upon executing the search warrant, Det. Emrick checked the Vehicle Identification Number ("VIN"), and learned that it matched the VIN on Bowersock's stolen truck.
 {¶ 4} The Pickaway County Grand Jury indicted Betts on one fourth-degree felony count of receiving stolen property and one fifth-degree felony count of receiving stolen property. The first count related to Bowersock's pick-up truck, and the second count related to Gaines' license plates. Betts pled not guilty, and the case proceeded to a jury trial.
 {¶ 5} Testimony at trial revealed that the truck sat in front of Betts' home for a period of time with a camper attached to it, which obstructed the license plates from view. Betts later moved the truck and camper to his other property, where he keeps building supplies and has a pole barn. Betts instructed Mr. Sowers to park the truck behind the pole barn. The spot Betts chose for the truck was not visible from the road.
 {¶ 6} Betts testified that he thought he was just storing the truck as a favor to Dick Lemaster, and that he never intentionally concealed the truck or its license plates. Betts also testified that he already has two trucks, and had no reason to steal one. Lemaster employs Gaines, the man who owned the license plates that were on the truck when Det. Emrick discovered it. Gaines did not testify at trial.
 {¶ 7} The jury found Betts guilty on the count of stolen property relating to the truck, but not guilty on the count relating to the license plates. The trial court entered a conviction and sentence. Betts appeals, asserting the following assignments of error: "I. The trial court erred by overruling appellant's motion for a mistrial. II. The prosecutor's misconduct denied appellant a fair trial. III. The trial court erred by failing to strike the testimony of Det. Emrick and Karen Sowers that was objected to by the appellant and by failing to instruct the jury to disregard those portions of their testimony. IV. The trial court erred by overruling appellant's motion for acquittal. V. The trial court denied appellant a fair trial by admitting inadmissible evidence into the record. VI. The jury's verdict was contrary to the weight of the evidence. VII. The trial court erred in its response to the questions of the jury."[2]
 II. {¶ 8} In his first assignment of error, Betts contends that the trial court erred in denying his motion for a mistrial after one of the state's witnesses testified that Betts is her husband's drug dealer.
 {¶ 9} The granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Garner (1995), 74 Ohio St.3d 49,59; State v. Glover (1988), 35 Ohio St.3d 18. Moreover, a mistrial is necessary only when the ends of justice so require and a fair trial is no longer possible. Garner at 59; State v. Franklin (1991), 62 Ohio St.3d 118,127. An abuse of discretion is more than an error in judgment; it implies that a trial court's ruling is "unreasonable, arbitrary, or unconscionable." Seidner, supra, citing State v. Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728;In re Jane Doe 1 (1991), 57 Ohio St.3d 135.
 {¶ 10} In this case, Betts moved for a mistrial after Karen Sowers testified that Betts sold drugs to her husband Betts contends that this statement was so prejudicial that it denied him a fair trial. However, it is apparent that Mrs. Sowers did not prejudice the jury so much that it chose to ignore the evidence and simply find Betts guilty. To the contrary, the jury acquitted Betts on one of the two offenses.
 {¶ 11} Additionally, Betts invited any error by initiating and vigorously pursuing the discussion of Mr. Sowers' drug use. Specifically, Betts repeatedly asked Mrs. Sowers whether her husband's incarceration resulted from his drug use, and each time she denied that his incarceration is related to anything other than domestic violence. Betts continued to push the issue, asking "[w]here does methamphetamine come up? * * * Where does that come into the picture?" Mrs. Sowers replied that Mr. Sowers had purchased drugs from someone in the courtroom many times. A court does not err when it permits the State to follow up on discussions initiated by the defense. State v. Brown (1988),38 Ohio St.3d 305, 528. The State followed up in this case by simply asking Mrs. Sowers which person in the courtroom sold drugs to her husband After her answer, the trial court sustained Betts' objection. Outside the hearing of the jury, the court offered to give a curative instruction. Betts' counsel chose to decline the curative instruction. The State did not raise the topic again, but Betts' counsel referenced both Mr. Sowers' drug use and Mrs. Sowers' statement that Betts is a dealer in his closing arguments.
 {¶ 12} The record indicates that Betts' initiated the discussion about drugs, declined the curative instruction about Betts being a dealer, and then referenced the accusation that he is a dealer in closing arguments. Thus, Betts invited any error. Moreover, the fact that the jury acquitted Betts on one of the two charges illustrates that Mrs. Sowers' statement did not excite such passion in the jury as to cause the jury to find Betts guilty regardless of the evidence. Because this illustrates that Betts was not prejudiced by the testimony, we cannot say that the trial court abused its discretion in denying Betts' motion for a mistrial. Accordingly, we overrule Betts' first assignment of error.
 III. {¶ 13} In his second assignment of error, Betts asserts that the prosecutor's misconduct denied him a fair trial. The State contends that the prosecutor did not engage in misconduct, and that none of the prosecutor's remarks denied Betts a fair trial.
 {¶ 14} The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659
at ¶ 45, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. When the defendant fails to object to the purported acts of prosecutorial misconduct, he waives all but plain error. Id., citing State v. Slagle
(1992), 65 Ohio St.3d 597, 604. The "conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial." State v. Gest (1995), 108 Ohio App.3d 248,257; State v. Keenan (1993), 66 Ohio St.3d 402; State v. Apanovitch
(1987), 33 Ohio St.3d 19, 24. Prosecutorial misconduct constitutes reversible error only in rare instances. Keenan, 66 Ohio St.3d at 406, quoting State v. Depew (1988), 38 Ohio St.3d 275, 288. Furthermore, in weighing its effect on appellant's due process rights, the effect of the misconduct on the jury must be determined in the context of the entire trial. Keenan at 406. The "touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an `error free, perfect trial.'" Gest at 257.
 {¶ 15} Betts first alleges that the prosecutor engaged in misconduct by deliberately eliciting an accusation that Betts is a drug dealer from Mrs. Sowers. However, as we noted in addressing Betts' first assignment of error, the prosecution was merely following up on an open-ended line of questioning initiated by Betts, namely, where methamphetamine "come[s] into the picture." After Mrs. Sowers' answered the State's follow-up question and the court sustained Betts' objection, the State made no further reference to drugs or drug dealing. Betts raised the accusation in his closing argument. We find that the prosecutor's question was not improper, that indeed Betts' own questions were equally likely to elicit the allegedly prejudicial response, and that Betts was not materially prejudiced by the prosecutor's examination of Mrs. Sowers.
 {¶ 16} Betts next asserts that the prosecutor committed misconduct by failing to disclose prior to trial that it would have Det. Emrick testify, at pages 117-118, regarding unrecorded comments Betts made prior to giving Det. Emrick a taped statement. In support of this assertion, Betts attached the State's discovery materials as an exhibit to his brief. The State asserts that Betts did not thoroughly read his exhibit. We agree. A brief examination of the discovery materials filed with the court reveals that the State fully disclosed the contents of Betts' unrecorded comments to Det. Emrick.
 {¶ 17} Betts also contends that the prosecutor deliberately elicited opinion testimony from a law enforcement official regarding his guilt. Specifically, the prosecutor asked Det. Emrick what led him to file charges against Betts. Det. Emrick's response was a lengthy list of factors that caused him to submit the case to a grand jury. The trial court sustained Betts' objection to the testimony.
 {¶ 18} While opinion testimony as to an ultimate issue generally is not permissible pursuant to Evid.R. 704, it is not clear that the prosecutor's question in this instance was directed at eliciting Det. Emrick's opinion. Moreover, even if the prosecutor was attempting to elicit Det. Emrick's opinion regarding Betts' guilt, a prosecutor's attempt to introduce inadmissible evidence does not necessarily constitute prosecutorial misconduct. State v. Ward (March 2, 2001), Montgomery App. No. 18211; State v. Cook (June 29, 1994), Montgomery App. No. 14013. Additionally, the factors listed by Det. Emrick were all contained in the record independent of his testimony regarding what led him to charge Betts. Thus, because the testimony was cumulative, it did not prejudice Betts or deny him a fair trial.
 {¶ 19} Betts next asserts that the prosecutor committed misconduct by asking Betts whether he ever asked Anderson about changing some identification numbers on the truck so that he could get tags for it. Betts contends that this question in effect asserted to the jury that Betts asked Anderson specifically about changing the identification numbers on the truck. Betts notes that the record only contains testimony indicating that Betts asked about getting tags for the truck. We find that the distinction here is immaterial, as either constitutes strong evidence of Betts' guilt, and there is no reason to believe that the jury would find Betts any less culpable if it believed he merely attempted to fraudulently obtain tags for the truck or that he attempted to change the truck's identification number in order to fraudulently obtain tags.
 {¶ 20} Finally, Betts asserts that the prosecutor committed misconduct on numerous occasions during closing argument. In particular, Betts asserts that the prosecutor argued that the jury should find Betts guilty based upon the character of his associates, asserted a fact not in evidence by speculating as to Betts' motive for attaching a camper to the truck, and offered his opinion about the credibility of the witnesses. Upon reviewing each of these alleged instances of misconduct, we cannot say that the prosecutor's statements fall outside the wide latitude afforded to prosecutors in closing argument. See Smith, supra at ¶ 51. For instance, Betts contends that the record does not contain any evidence to support the prosecutor's statement that he hooked a camper to the end of the truck for the purpose of concealing its tags. But the record does contain evidence that the truck sat in front of Betts' home, with a camper attached to it, and that the camper obstructed the tags from view. Similarly, even if we deemed the prosecutor's comment that Mr. Sowers "didn't lie" improper, it does not represent plain error that prevented Betts from receiving a fair trial.
 {¶ 21} Accordingly, we overrule Betts' second assignment of error.
 IV. {¶ 22} In his third assignment of error, Betts asserts that the trial court committed prejudicial error when it failed to strike and order the jury to disregard the portions of the testimony of Mrs. Sowers and Det. Emrick discussed above. Betts contends that he suffered prejudice as a result of the trial court's failure to sua sponte strike and order the jury to disregard this testimony after the court sustained Betts' objections to it. The State contends that Betts waived all but plain error by failing to request that the trial court strike the inadmissible testimony, and that Betts invited the error with respect to Mrs. Sowers' drug dealer accusation.
 {¶ 23} Crim.R. 52(B) provides that a plain error in the proceedings that affects substantial rights may be noticed even though it was not brought to the attention of the court. An appellate court that reviews a proceeding for plain error must examine the evidence properly admitted at trial and determine whether the outcome of the trial would have been different but for the error. State v. Moreland (1990), 50 Ohio St.3d 58,62. The Supreme Court of Ohio has cautioned that "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." State ex rel. Beaver v. Konteh (1998), 83 Ohio St.3d 519, 521,State ex rel. Soukup v. Celebrezze (1998), 83 Ohio St.3d 549, 550; HalArtz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
 {¶ 24} Here, Betts did not request that the trial court strike Mrs. Sowers' testimony, and he specifically declined a curative instruction on the testimony. Thus, Betts waived all but plain error with regard to the trial court's failure to strike the offending testimony, and invited any error relating to the trial court's failure to issue a curative instruction regarding the testimony. We cannot find that the outcome of Betts' trial would have been different if the trial court had stricken Mrs. Sowers' testimony. The record contains competent, credible evidence of Betts' guilt even without Mrs. Sowers' testimony, and the jury was not so impassioned by Mrs. Sowers' testimony that it was unable to construe the evidence in Betts' favor and acquit him on one charge.
 {¶ 25} Likewise, Betts did not state the basis for his objection to Det. Emerick's testimony and, once the trial court sustained the objection, Betts did not request that the trial court strike the testimony or seek a curative instruction. Betts contends that the opinion of a law enforcement officer as to a defendant's guilt holds such sway over a jury that it prejudices the defendant, and thus that the trial court committed a plain error when it failed to sua sponte strike the testimony and issue a curative instruction. However, like Mrs. Sowers' testimony, we cannot say that Det. Emrick's testimony was so prejudicial to Betts that the jury would not have convicted him but for the testimony. Moreover, we note that the testimony was merely cumulative to other evidence contained in the record, and therefore it did not prejudice Betts.
 {¶ 26} Accordingly, we overrule Betts' third assignment of error.
 V. {¶ 27} In his fifth assignment of error, Betts contends that the trial court denied him a fair trial by admitting inadmissible evidence into the record. Betts lists a number of incidents in which the court overruled his objections or in which he failed to object, but believes that the trial court should have sua sponte disallowed specific testimony. Betts does not identify which rules of evidence he believes were violated, and does not cite any authority to support his arguments.
 {¶ 28} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271; State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968), 390 U.S. 1024. As we noted above, a finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we will not substitute our judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 29} First, Betts asserts that the trial court erred by permitting Bowersock to offer his opinion as to whether the Deputy Sheriff who took his stolen vehicle report accurately recorded the VIN after Bowersock testified that he did not have the VIN memorized and therefore was not sure if the number on the report was accurate. In fact, Bowersock did not testify that the report was accurate. He only testified that he had no reason to believe that the Sheriff's Deputy took down information other than what he, Bowersock, provided. We find that Bowersock's testimony is relevant, and that the trial court did not abuse its discretion in overruling Betts' objection to it.
 {¶ 30} Betts next asserts that the trial court erred by admitting photographs that do not represent how the landscape actually looked at the time of crime. The State introduced photographs that were taken the day that the State executed the search warrant to depict how the truck was hidden behind the barn and some stacked insulation on Betts' land The State also introduced photographs taken several months later that depicted the distance from the road to the barn. Det. Emrick made clear in his testimony that the photographs from the road do not represent the state of the landscape at the time of Betts' arrest due to the changes in trees and vegetation. The trial court overruled Betts' objection to the photographs, noting that the State made the limited purpose of the photographs clear during Det. Emrick's testimony. Betts did not request that the trial court issue a limiting instruction. We find that the photographs constitute relevant evidence for the purpose stated, and that Det. Emrick's testimony clearly informed the jury of the limits of the photographs' relevancy. Therefore, we find that the trial court did not abuse its discretion in permitting the photographs.
 {¶ 31} Betts next asserts that the trial court erred in allowing Det. Emrick to testify about statements made by Mr. Sowers to Det. Emrick and made to Mr. Sowers by a third party. During cross-examination of Det. Emrick, Betts elicited the following testimony: "The way I understand it is that [Betts] was supposed to have the generator, he had took it to another fellow's residence, and [Mr. Sowers] apparently had contacted this other guy and the other guy said [Betts] had went there and picked it up. And then [Mr. Sowers] approached [Betts] about getting the generator back and he would not give it back to him." On the State's re-direct of Det. Emrick, Betts objected when Det. Emrick testified, "[h]e had lent the generator out to another individual. [Mr. Sowers] had made contact with that person who indicated [Betts] got the generator back and [Betts] denied getting the generator back, and he was upset with him." Betts' objection appears to be based upon a contention that the testimony constitutes hearsay. However, to the extent that the testimony quoted above constitutes inadmissible hearsay, Betts waived any error by first eliciting virtually identical testimony himself, and suffered no prejudice as a result of the trial court overruling his objection, as the jury had already heard virtually identical testimony when Betts first examined the witness.
 {¶ 32} Betts next asserts that the trial court erred when it overruled his objection to Det. Emrick's testimony about statements that a third party made to another detective. Specifically, Det. Emrick testified "Detective Crooks made contact with the property owner * * * and she did not have a problem with us being on the property." Det. Emrick's testimony related to whether Det. Emrick legally entered Betts' neighbor's property in order to read the truck's license plates. Again, it appears Betts objects based on the rule against hearsay. However, words constituting conduct are not hearsay. State v. Redd (June 23, 1994), Cuyahoga App. Nos. 65671, 65672; Evid.R. 801(C), Staff Note. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Here, the testimony Betts objects to relates to his neighbor's statement granting permission to enter her property. Thus, her words constitute conduct. Moreover, even assuming that the testimony constitutes inadmissible hearsay, Betts made no effort to demonstrate that he suffered prejudice as a result of the testimony.
 {¶ 33} Next, Betts asserts that the trial court erred by permitting Mrs. Sowers to testify about a telephone conversation between Betts and Mr. Sowers. Mrs. Sowers testified that she was in the room when her husband was speaking to Betts, and that she heard him agree to help Betts move the truck from his residence to his barn. Mrs. Sowers also testified that she heard Mr. Sowers speaking to Det. Emrick on the telephone when he gave Det Emrick the tip about a possible stolen truck. Neither of these statements constitutes hearsay, as they do not assert that Mr. Sowers actually helped move the truck or that the truck was actually stolen. Rather, the statements merely stand for the facts that Mr. Sowers agreed to help Betts and that Mr. Sowers gave Det. Emrick a tip.
 {¶ 34} Finally, Betts asserts that the trial court erred by permitting Mr. Sowers to testify about the conversation he overheard between Betts and Anderson, and erred by permitting Mr. Sowers to testify about a statement that his wife made to him. Specifically, Mr. Sowers testified that he overheard Betts ask Anderson how he could get tags for the truck, and Anderson reply that it was not worth going to jail for. Mr. Sowers testified that Mrs. Sowers told him to call Det. Emrick to report his suspicions. Again, the statements Betts challenges do not constitute hearsay. Betts' question to Anderson is not an assertion. Anderson's answer to Betts was not offered to prove the truth or falsity of his opinion that the truck was not worth going to jail for. Likewise, Mrs. Sowers' suggestion that Mr. Sowers call Det. Emrick was not offered to prove the truth or falsity of her opinion that he should make the call. Additionally, Betts did not object to any of this testimony at trial.
 {¶ 35} In sum, we find that the trial court exercised its discretion in accordance with the rules of evidence with respect to the testimony Betts objects to on appeal. Accordingly, we overrule Betts' fifth assignment of error.
 VI. {¶ 36} In his fourth assignment of error, Betts contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal because the State did not present sufficient evidence to sustain a conviction. In his sixth assignment of error, Betts contends that the jury's verdict is contrary to the manifest weight of the evidence.
 {¶ 37} The Ohio Supreme Court clearly outlined the role of an appellate court presented with a sufficiency of evidence argument in Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 38} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks,61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 39} Pursuant to R.C. 2913.51, a person commits the crime of receiving stolen property if he "receive[s], retain[s], or dispose[s] of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." In this case, the record contains unrefuted evidence that the truck constitutes the property of another, as the VIN number matches the VIN of Bowersock's stolen truck. The record also contains unrefuted evidence that Betts received or retained the truck on his property. Finally, the record contains evidence that, if believed, would allow a reasonable trier of fact to conclude that Betts knew the truck was stolen. Specifically, the conversation between Betts and Anderson, as overheard by Mr. Sowers, illustrates Betts' knowledge that the truck was stolen.
 {¶ 40} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; Martin, 20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge
(1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 41} In addition to the evidence outlined above, the evidence here includes the fact that the truck was at Betts' home for several weeks, then at Betts' other property for a period of time. Two witnesses testified that they observed Betts driving the truck. The license plates on the truck first were concealed by a camper. After Betts moved the truck to his other property, Betts instructed Mr. Sowers to move the truck behind the barn, where it could not be seen from the road. Mr. Sowers overheard Betts asking how he could get license plates for the truck. Although Betts offered an explanation for each of these circumstances, the jury was free to believe or disbelieve any evidence properly before it. We cannot say that the jury, in choosing to disbelieve Betts' testimony in favor of the testimony of other witnesses, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 42} Because we find that sufficient evidence supports Betts' conviction, and that his conviction is not contrary to the manifest weight of the evidence, we overrule Betts' final assignments of error. Accordingly, we affirm the judgment of the trial court.
Judgment Affirmed.
Abele, J. and Evans, J., concur in Judgment and Opinion.
[2] Betts filed a notice with this court on September 15, 2003, withdrawing his seventh assignment of error.