JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant Aletha Harris, as the executrix of the estate of Annie B. Holman,[1] appeals from an adverse jury verdict on her medical malpractice claims against defendant-appellee Georgiana Kates, M.D. The sole issue on appeal is whether the court abused its discretion by prohibiting appellant from testifying in rebuttal to statements her decedent-mother made to her regarding her mother's medical treatment. We conclude that neither of the proffered statements were testimonial in nature and that the court affected a substantial right by refusing to allow them into evidence. We reverse and remand for a new trial.
 {¶ 2} The complaint alleged that Kates negligently failed to diagnose and treat Holman's colon cancer. Holman alleged that she presented to Kates a number of gastrointestinal complaints that, under the applicable standard of care, should have indicated the presence of a more serious health problem. Kates claimed that she did not breach the relevant standard of care because she had repeatedly asked Holman to submit to a colonoscopy and other tests, but Holman refused to take these tests.[2]
 {¶ 3} During her direct testimony, appellant recounted complaints her mother had made in 1998 relating to stomach pain and constipation. She began to say, "[a]t *Page 4 
that time she [Holman] did say Dr. Kates mentioned a sigmoidoscopy —." The court sustained an objection and told the jury to "disregard comments Dr. Kates may have said." The examination continued:
 {¶ 4} "Q. And do you know whether or not Dr. Kates had offered your mother, in 1998, when she first went to see Dr. Kates, do you know whether or not she offered your mother a sigmoidoscopy?
 {¶ 5} "MR. KILBANE: Objection.
 {¶ 6} "MS. MALNER: Objection.
 {¶ 7} "THE COURT: Sustained.
 {¶ 8} "Q. Do you know whether or not the sigmoidoscopy that — whether or not when she first went to see Dr. Kates in 1998, did your mother discuss with you whether or not she had agreed to have a sigmoidoscopy?
 {¶ 9} "MS. MALNAR: Objection.
 {¶ 10} "THE COURT: Counsel approach.
 {¶ 11} "(Thereupon, a discussion was had between Court and counsel off the record, after which the following proceedings were had in open Court:)
 {¶ 12} "MR. ROSENFIELD: Thank you, your Honor.
 {¶ 13} "THE COURT: Sustained."
 {¶ 14} After the close of evidence, appellant told the court that she had wished to introduce testimony under Evid.R. 804(B)(5) for the purpose of telling the jury that: *Page 5 
 {¶ 15} "At no time did her mother mention the word colonoscopy. All her mother mentioned is virtually everything else that is in the record.
 {¶ 16} "She will say that following the diagnosis, her mother said on more than one occasion and after the colonoscopy detecting her cancer had been discovered, why didn't Dr. Kates ever suggest this, or tell me about this?"
 {¶ 17} Kates objected to the admission of the testimony on hearsay grounds, noting that any testimony by appellant as to what Holman said would not be made to rebut what Kates had testified to in court. Instead, it would be intended to rebut a statement Kates made during treatment, before she became a party to the estate's action.
 {¶ 18} The court said that it considered the statements to be "double hearsay" because Kates had been the declarant, not Holman. Counsel told the court that appellant would not testify to what Kates said, but to what Holman said. These statements would be that "at no time did her mother mention the word colonoscopy. All her mother mentioned is virtually everything else that is in the record."
 {¶ 19} The court rejected appellant's argument because it found:
 {¶ 20} "* * * the type of testimony you are going to offer is too unreliable. It doesn't — it's not about an exact statement about colonoscopy. Its about an inference you are asking the jury to make from the fact it was never mentioned by *Page 6 
the mother to the daughter, and therefore, it wasn't said. That is unreliable in my opinion and will not be allowed in."
 {¶ 21} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See Evid.R. 801(C).
 {¶ 22} Evid.R. 801(A) defines the word "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." The Rules of Evidence do not define the word "assertion," but the supreme court has stated that an "assertion" for hearsay purposes "`simply means to say that something is so, e.g., that an event happened or that a condition existed.'"State v. Carter, 72 Ohio St.3d 545, 549, 1995-Ohio-104, quoting 2 McCormick on Evidence (4 Ed.1992) 98, Section 246 (emphasis deleted).
 {¶ 23} Appellant wanted to testify to two matters: (1) "at no time did her mother mention the word colonoscopy" and (2) Holman's comment "why didn't Dr. Kates ever suggest this, or tell me about [a colonoscopy]?"
 {¶ 24} Testimony by appellant to the effect that Holman never mentioned the word "colonoscopy" did not incorporate any assertion by Holman. Even Kates admits this, arguing that "[a]ppellant sought to emphasize what was not said by the decedent." (Emphasis sic.) This being the case, Holman could not have made a *Page 7 
"statement" as defined by Evid.R. 801(C); therefore, appellant's proffered testimony is not hearsay.[3]
 {¶ 25} We likewise find that Holman's question "why didn't Dr. Kates ever suggest this, or tell me about [a colonoscopy]" is not an assertion and therefore not hearsay. In Carter, the supreme court considered whether the state could present testimony from a witness who overheard a criminal defendant ask a third party where the defendant could obtain a gun and ammunition. The supreme court found that this question did not constitute an assertion because "* * * a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered `to prove the truth of the matter asserted,' it does not constitute hearsay as defined by Evid.R. 801." Id.
 {¶ 26} In State ex rel. Herring v. Ok Sun Bean Sun Ae Holt, Lucas App. No. L-01-1463, 2002-Ohio-4350, the Sixth Appellate District permitted a police detective to testify that a masseuse had "massage[d] his groin area and asked if he would like her to continue for an additional charge." Id. at 4|5. Relying on Carter, the Sixth Appellate District held, "[c]learly, under Ohio law, the inquiry by one masseuse as to whether the detective wanted her to extend his massage was not hearsay because it was an inquiry as to whether the detective wished to purchase sexual activities." Id. at Tf 13. The Sixth District found that the masseuse asked a "true question" because *Page 8 
her question could not be proven true or false since it was not a statement of fact.[4] See, also, State v. Betts, Pickaway App. No. 02CA26, 2004-Ohio-818.
 {¶ 27} Holman's question as to "why didn't Dr. Kates suggest this" was not an assertion of fact. As in Carter and Herring, Holman's question could not be proven true or false — Holman merely sought information as to why Kates had not recommended a medical test. It was not an assertion for purposes of Evid.R. 801(C). It follows that any discussion of the applicability of Evid.R. 804(B)(5) is irrelevant because appellant's proffered testimony does not constitute hearsay.
 {¶ 28} We also find that the court's refusal to allow appellant's testimony on these matters affected a substantial right as required by Evid.R. 103(A).
 {¶ 29} The Staff Notes to Evid.R. 103 state that "[r]ule 103(A) provides that a case need not be retried for error in the admission or exclusion of evidence (even though there be an objection) unless a substantial right of a party is affected. In *Page 9 
short, harmless evidentiary error is not a ground for reversal and retrial." See Calderon v. Sharkey (1982), 70 Ohio St.2d 218, 224, fn.8.
 {¶ 30} The court's error in refusing to allow appellant's proffered testimony was not harmless because it effectively left Kates' testimony relating to the standard of care unchallenged. Kates agreed that the applicable standard of care dictated that a patient with Holman's complaints be advised to have a colonoscopy. Kates repeatedly testified that she advised Holman to have a colonoscopy, although she had no written notes to verify her testimony. Without any contrary testimony from appellant to consider, the jury had no evidence to contradict Kates, so its defense verdict may have been preordained. Appellant's testimony would have countered Kates' testimony and forced the jury to weigh matters of credibility.
 {¶ 31} We believe the court overstated its reservations that appellant's proffered testimony would be too unreliable because it would ask the jury to infer as a fact something that had not been mentioned in conversations. Kates testified that she repeatedly told Holman to have a colonoscopy, but her patient notes contain nothing to support her testimony. Appellant testified that she had been familiar with Holman's complaints and that she was familiar with the medical treatment that Holman received from Kates. Her proffered rebuttal testimony was relevant to rebut Kates' testimony. The possibility of jury confusion would have been remote under these circumstances. *Page 10 
 {¶ 32} While the court has broad discretion to control the admission of evidence, "[t]he threshold of admissibility of evidence is a low one, reflecting the policy favoring the admission of relevant evidence for the trier of fact to weigh." See State v. Carter, Cuyahoga App. No. 80461, 2002-Ohio-4092, at ¶ 12. Under Evid.R. 402, "all relevant evidence is admissible," except when the danger of unfair prejudice substantially outweighs its probative value. See Evid.R. 403(A). Evid.R. 403(A) "manifests a definite bias in favor of the admission of relevant evidence. The dangers associated with the potentially inflammatory nature of the evidence must substantially outweigh its probative value before the court should reject its admission." State v. Irwin, Hocking App. Nos. 03CA13 and 03CA14, 2004-Ohio-1129, at T|22, citing Gianelli Snyder, Baldwin's Ohio Practice, Evidence (2 Ed.), Section 403.9 (emphasis sic). We fail to see substantial prejudice from the admission of appellant's proffered rebuttal testimony.
 {¶ 33} This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee her costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
PATRICIA ANN BLACKMON, J., CONCURS IN JUDGMENT ONLY FRANK D. CELEBREZZE, JR., A.J., DISSENTS WITH SEPARATE OPINION
[1] Holman died in February 2005, prior to trial.
[2] Holman underwent a sigmoidoscopy, a screening examination which examines the sigmoid, or distal part of the colon. Although a sigmoidoscopy can probe up to 60 cm inside the colon, Kates was only able to examine 35 cm into Holman's bowel because of stool obstructions. Kates said that she wanted Holman to have an enema before continuing the screening, but Holman refused because of the discomfort associated with the test.
[3] There is no argument that this constituted a "non-verbal assertion."
[4] The federal courts appear to employ a different standard, holding that a question can sometimes incorporate an assertion. For example, inUnited States v. Summers (C.A.10, 2005), 414 F.3d 1287, the Tenth Circuit Court of Appeals considered the following question from Summers' codefendant upon being apprehended by the police: "how did you guys find us so fast?" The court of appeals held that this question contained "an inculpatory assertion" and that it begged credulity to assume that the codefendant had been "exclusively interested in modern methods of law enforcement, including surveillance, communication, and coordination." Id. at 1300. Finding that the statement, fairly construed, "intimated both guilt and wonderment at the ability of the police to apprehend the perpetrators of the crime so quickly," the court of appeals distinguished it from cases in which questions were "designed to elicit information and a response, rather than assert the defendant's involvement in criminal activity." Id.